UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BAILLIE LUMBER CO., L.P.
a Delaware limited partnership,

                                   Plaintiff,             11-CV-995A(Sr)

v.

ACE AMERICAN INSURANCE
COMPANY, a Pennsylvania corporation,

                                   Defendant.

---

## DECISION AND ORDER

This matter was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #29.

Currently before me are the parties' motions seeking a declaration of which law, New York or Delaware, is to apply to this dispute involving the issuance of an insurance policy by the defendant to the plaintiff.[1] Dkt. ##54 and 58. Prior to the filing of the instant motions, the parties entered into a "Stipulation to Facts." Dkt. #53.

---

[1] This Court concludes that the parties have improperly filed the instant motions as seeking partial summary judgment. It is clear from the prior proceedings had herein that defendant Ace American Insurance Company is contemplating a motion for summary judgment, however, before any such relief may be sought by any party, a determination must be made as to which law applies. Accordingly, although the instant motions are styled as and purport to seek partial summary judgment, this Court will treat the motions as seeking a declaration of the applicable law and therefore issues this Decision and Order.

By its motion, defendant asserts that New York law should govern, whereas, plaintiff maintains that Delaware law should govern the interpretation of the policy.

**PROCEDURAL BACKGROUND**

Plaintiff, Baillie Lumber Co., L.P. ("Baillie" or "plaintiff"), commenced this action against defendant Ace American Insurance Co. ("Ace" or "defendant"), in Los Angeles County Superior Court in California on or about June 22, 2011, seeking damages for, *inter alia*, breach of contract and bad faith in connection with an insurance policy issued by the defendant. Dkt. #57-1. On July 21, 2011, defendant removed the action to the United States District Court for the Central District of California, Western Division on the basis of diversity of citizenship pursuant to Title 28, United States Code, Section 1332. Dkt. #57-20. Thereafter, defendant filed a motion to transfer venue to this Court on October 18, 2011. Dkt. #57-21.

In an Order filed November 16, 2011, United States Magistrate Judge Paul L. Abrams granted defendant's motion to transfer venue. *Id*. In concluding that the matter should be transferred to the Western District of New York, Magistrate Judge Abrams considered the following eight factors and balanced the interests of the Central District of California and the Western District of New York: the location where the agreement was entered into; the state most familiar with the governing law; plaintiff's choice of forum; the parties' contacts with the forum; contacts relating to the plaintiff's cause of action in the chosen forum; difference in litigation costs in the two fora;

availability of compulsory process to compel attendance of unwilling non-party witnesses; and ease of access to sources of proof. Dkt. #57-21.

In considering the location where the relevant agreement was entered into, Magistrate Judge Abrams stated,

> Plaintiff alleges that a written insurance contract existed between plaintiff and defendant which required defendant to reimburse plaintiff for the loss of covered property, that plaintiff performed its obligations under the policy, and that it incurred covered losses, which defendant denied, thereby breaching the terms of the policy; that defendant did not diligently investigate or fairly evaluate the claims before denying them; and that defendant's position was not supported by fact or law. While there is no direct evidence before the Court as to where the insurance policy was entered into, it can be inferred from the location of the parties that it was made and entered into at one (or both) of the two company headquarters relevant to this action, i.e., in New York or Pennsylvania.

Dkt. #57-21, pp.6-7.

Following the transfer, this Court entered a Case Management Order setting various discovery deadlines. Dkt. #37. Shortly thereafter, the parties notified the Court of certain discovery disputes and a status conference with the Court was held on March 27, 2012. In its early communications with the Court, Ace stated that it believes that the pivotal issue in this dispute is the application of the suit limitation provision in the policy. The suit limitation provision in the policy provides:

> Suits Against Us
>
> You agree not to bring suit against us unless you have complied with all the terms of this policy. Any such suit must

> be brought within two years after the direct physical loss or damage occurred.

Dkt. #57-1, p.24. During the initial status conference, the issue of which state law applies to the dispute was raised and this Court advised that a limited Case Management Order with respect to that issue would be forthcoming. Following an additional status conference concerning another discovery dispute, the parties filed the instant motions seeking a declaration of which state law shall apply. Dkt. ##54 and 58.

## **FACTUAL BACKGROUND**

The following facts are undisputed.

Baillie, a manufacturer, distributor and exporter of hardwood lumber, is a limited partnership existing pursuant to the laws of the State of Delaware, with its principal place of business in New York. Dkt. #53, ¶¶3-4; Dkt. #68-1, ¶1. Baillie's main office is located at 4002 Legion Drive, Hamburg, New York. Dkt. #53, ¶1. Ace is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business also in Pennsylvania. *Id*. at ¶¶2 and 4.

In 2004, Baillie applied for insurance coverage through its former broker, Matthews, Bartlett & Dedecker, Inc., a subsidiary of M&T Bank Corporation, located in Buffalo, New York. Dkt. #68-1, ¶6. In 2005, Ace issued an insurance policy to Baillie bearing policy number PHF074595. *Id*. at ¶10. For the next several years, Mathews, Bartlett & Dedecker renewed the insurance coverage on Baillie's behalf. *Id*. at ¶11. "In

the fall of 2007, Ace sent a copy of the renewal policy forms and endorsements for the 2008-2009 year to Baillie's New York broker. Baillie's New York broker received those policy forms and endorsements on November 16, 2007." *Id*. at ¶12. Prior to January 2008, Baillie retained the Van Meter Insurance Group ("Van Meter") located in Tennessee to negotiate the insurance policy applicable to the loss at issue in this matter. Dkt. #53, ¶7. In January 2008, Baillie, from its office located in Hamburg, New York advised Ace, in writing, directed to an address in Illinois, that Van Meter would be its exclusive agent of record and instructed Ace to provided Van Meter with a copy of the policy. Dkt. #53, ¶11 and Dkt. #68-1, ¶13. No part of the policy language was drafted by Baillie or by Van Meter. Dkt. #53, ¶¶17-18. The policy, prepared exclusively by Ace, contains no provision with respect to choice of governing law. Dkt. #65, ¶9.

Ace issued the renewal policy effective February 1, 2008 to February 1, 2009 from its offices in Wilmington, Delaware, and mailed it from its offices in Wilmington, Delaware to Van Meter's office in Franklin, Tennessee. Dkt. #53, ¶¶13-16; Dkt. #65, ¶3; Dkt. #68-1, ¶16. Premium payments on the policy were issued from Baillie's New York office. Dkt. #68-1, ¶17. In response to plaintiff's statement that claims made under the policy were to be delivered to and processed by Ace's Delaware offices, Ace states "[c]laims made under the Policy could **also** have been made after hours to a direct telephone number with a 770 area code in Georgia, to a toll free

the fall of 2007, Ace sent a copy of the renewal policy forms and endorsements for the 2008-2009 year to Baillie's New York broker. Baillie's New York broker received those policy forms and endorsements on November 16, 2007." *Id*. at ¶12. Prior to January 2008, Baillie retained the Van Meter Insurance Group ("Van Meter") located in Tennessee to negotiate the insurance policy applicable to the loss at issue in this matter. Dkt. #53, ¶7. In January 2008, Baillie, from its office located in Hamburg, New York advised Ace, in writing, directed to an address in Illinois, that Van Meter would be its exclusive agent of record and instructed Ace to provided Van Meter with a copy of the policy. Dkt. #53, ¶11 and Dkt. #68-1, ¶13. No part of the policy language was drafted by Baillie or by Van Meter. Dkt. #53, ¶¶17-18. The policy, prepared exclusively by Ace, contains no provision with respect to choice of governing law. Dkt. #65, ¶9.

Ace issued the renewal policy effective February 1, 2008 to February 1, 2009 from its offices in Wilmington, Delaware, and mailed it from its offices in Wilmington, Delaware to Van Meter's office in Franklin, Tennessee. Dkt. #53, ¶¶13-16; Dkt. #65, ¶3; Dkt. #68-1, ¶16. Premium payments on the policy were issued from Baillie's New York office. Dkt. #68-1, ¶17. In response to plaintiff's statement that claims made under the policy were to be delivered to and processed by Ace's Delaware offices, Ace states "[c]laims made under the Policy could **also** have been made after hours to a direct telephone number with a 770 area code in Georgia, to a toll free

telephone number, or to the following email address: USI-FirstNoticeofLoss@ace-ina.com.[2]  Dkt.#65, ¶5 (emphasis added).

During the effective period of the policy, Baillie agreed to ship a certain quantity of lumber to one of its customers, Douglas Furniture at Douglas' warehouse in Tijuana, Mexico.  *Id*. at ¶18.  In July 2008, Bailllie requested that the Tijuana location be added to the policy.  *Id*. at ¶19.  Ace issued a new declaration effective July 31, 2008 listing the Tijuana location.  *Id*. at ¶20.

On September 11, 2009, Baillie's New York office filed a Property Loss Notice in connection with the lumber stored at the Tijuana location.  *Id*. at ¶22.  As described in Magistrate Judge Abrams' Order, "In September 2009, plaintiff reported to defendant that, during the policy period, lumber it sold to the Douglas Furniture company [sic] had been seized by Douglas' employees in Tijuana, Mexico and sold to pay wages after Douglas went into bankruptcy.  Plaintiff made a claim under the policy, claiming that Douglas had not paid plaintiff for the seized lumber."  Dkt. #57-21, p.3.  The Property Loss Notice listed the date of loss as February 1, 2009.  Dkt. #68-1, ¶23.

**DISCUSSION AND ANALYSIS**

---

[2] Ace's own document titled "HOW TO OBTAIN CLAIMS HELP," first lists a Wilmington, Delaware mailing address and a telephone number with a (302) area code (Delaware) for assistance with claims.  The same document then lists Georgia and the toll free telephone numbers for after hours emergency claim reporting.  Dkt. #60-1,p.2.

Where, as here, there has been a transfer of venue pursuant to Title 28, United States Code, Section 1404(a), the court to which the matter is transferred must apply the choice of law rules that would have been followed in the initial (transferor) court. *Van Dusen v. Barrack*, 376 U.S. 612 (1964). In other words, this Court must apply California's choice of law rules in determining which law is to apply to this matter.

Under California law, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." California Civ. Code §1646. However, California courts, including the Ninth Circuit Court of Appeals, have recognized differences among California courts as to whether California's choice of law rule for contracts is the "governmental interest" test or the provisions set forth in §1646. *See Arno v. Club Med. Inc.*, 22 F.3d 1464 (9th Cir. 1994); *compare, Reich v. Purcell*, 67 Cal.2d 551 (1967) and California Civ. Code §1646. In contrast to California Civil Code Section 1646, under the governmental interest analysis, the place of performance and the place where the contract was made are factors to be considered, but neither are determinative. *See Reich*. In *Frontier Oil Corporation v. RLI Insurance Company*, 153 Cal.App.4th 1436 (2007), the Second Appellate District clarified that section 1646 applies only to issues of policy interpretation, while the governmental interest analysis applies to all other issues.[3]

---

[3] The Court acknowledges that there are California cases which hold that a question of whether the relevant California statute of limitations or another jurisdiction's statute of limitations should be applied in a particular case must be determined through the application of the governmental interest analysis that governs choice of law issues

> We conclude that notwithstanding the application of the governmental interest analysis to other choice-of-law issues, Civil Code section 1646 is the choice-of-law rule that determines the law governing the interpretation of a contract. Section 1646 states that a contract is to be interpreted according to the law and usage of the place it is to be performed if the contract "indicate[s] a place of performance" and according to the law and usage of the place it was made if the contract "does not indicate a place of performance." A contract "indicate[s] a place of performance" within the meaning of section 1646 if the contract expressly specifies a place of performance or if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances.

*Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 1442-43 (2007). Thus, §1646 will govern the determination of choice of law in this matter.

There is no dispute, the insurance policy at issue here does not specify a place of performance. However, as explained in *Frontier Oil*, the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances. The insurance policy obtained by Baillie from Ace was intended to insure Baillie against certain losses under the terms of an "International Advantage" Commercial Insurance Policy. More specifically, Baillie's complaint alleges, "[a]mong other duties, the Policy imposes on Plaintiff the duty to pay premiums to Defendant in exchange for insurance against loss of Plaintiff's business personal property, including lumber, located in specified locations outside of the United States." Dkt. #57-10, ¶6.

---

generally. *See, e.g., IBLC Abogados, S.C. v. Bracamonte*, No. 11-cv-2380, 2013 WL 3829401 (S.D.Cal. 2013). While the ultimate issue in this matter likely relates to the applicability and enforceability of a "suit limitation provision," that is a matter of policy interpretation and not a statute of limitations matter such that the governmental interest analysis would apply.

The policy in effect at the time of the loss (February 1, 2009) states on its signature page, "[b]y signing and delivering the endorsement(s) to you, we state that it is a valid contract when counter-signed by our authorized representative." Dkt. #57-14, p.47. Just below that statement is the name Ace American Insurance Company and the signatures of George D. Mulligan, Secretary and John J. Lupica, President. It is undisputed that the renewal policy and endorsements effective February 1, 2008 to February 1, 2009 were issued from Ace's offices in Wilmington, Delaware, and mailed from its offices in Wilmington, Delaware to Van Meter, as agent for Baillie, at Van Meter's office located in Franklin, Tennessee. Therefore, the "making of the contract" occurred or was completed in Delaware by the signing and mailing from that jurisdiction.

In connection with the instant motions, Ace submitted a Declaration of Rebecca Golden, an Ace Claim Representative who "participated in the investigation, evaluation, and handling of the claim for benefits made by Baillie Lumber Company, L.P. ("Baillie") under an all risk insurance policy with policy number PHFD36831893, effective between February 1, 2008 and March 1, 2009 (the "Policy") for the alleged loss of business personal property that occurred before February 1, 2009 (the "Claim.")" Dkt. #66-1, ¶1. The Declaration was dated May 30, 2012, Wilmington, Delaware. *Id*. Ms. Golden's Declaration further states that no claim payments were made to Baillie under the Policy. Dkt. #66-1, ¶3.

-9-

Notwithstanding the fact that no claim payments were ever made to Baillie under the Policy, based on the statements in Ms. Golden's Declaration concerning her participation in the investigation, evaluation and handling of the claim, together with the fact that Ms. Golden executed her Declaration in Delaware (suggesting that she participated in the investigation from Ace's offices in Delaware), this Court concludes that it is reasonable to assume that if any payments were to be made under the Policy, those payments (performance under the policy) would have originated in Delaware.

Accordingly, applying California's choice of law rules, by reason of the fact that the policy was formed in Delaware and that performance under the terms of the policy would have occurred in Delaware, this Court finds that Delaware law shall apply to this dispute.

**SO ORDERED.**

**Dated:**   **Buffalo, New York**
             **September 13, 2013**

                                             *s/ H. Kenneth Schroeder, Jr.*
                                             **H. KENNETH SCHROEDER, JR.**
                                             **United States Magistrate Judge**